UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

|  |  |
|---|---|
|  | Case No. 19-23827-rdd |
| In re. | Chapter 11 |
|  |  |
| LARRY B. WEINSTEIN | Judge: Hon. Robert D. Drain |
| Debtors |  |

------------------------------------------------------------x

## AFFIRMATION IN OPPOSITION TO APPLICATION FOR RELIEF OF AUTOMATIC STAY OF WELLS FARGO AS TO 32 PROSPECT STREET, SPRING VALLEY, N.Y.

Harvey S. Barr, Esq., an attorney duly admitted to practice before the Courts of the State of New York and the United States Bankruptcy Court for the Southern District of New York, hereby affirms under penalty of perjury as follows:

1. I am the attorney for Larry B. Weinstein (the "Debtor") who is one of the owners of the property known as 32 Prospect Street, Spring Valley, NY (Tax ID: Section 57:24-1-22.1) (hereinafter, the Premises).

2. On October 10, 2019 the debtor filed a petition for relief pursuant to Chapter 11 of the U.S. Bankruptcy Code.

3. At the time of the filing the Debtor was the owner of the Premises together with his ex-wife, consisting of a one (1) family semi-attached residence. Debtor also owns a single family residence located at 7 Stillo Drive, Airmont, New York 10952 together with his ex-wife; a one family residence located at 4833 Marston Lane, Lake Worth, Florida 334667, together with his Daughter; as well as a substantially completed commercial structure located in Spring Valley, New York, owned by a Limited Liability Company in which Debtor is the Sole Member.

5. Pursuant to a prior Order of this Court the commercial properties are the subject of continuing litigation in the State Court's.

6.    The Debtor also owns approximately 3 acres of undeveloped land in Ulster County, New York, which upon information and belief may not be capable of development due to environmental issues.

7.    Prior to the "stay in place" order by the Governor of New York as a result of Covid-19 an offer was received for the Premises and an inspection performed. The Debtor made several of the improvements to the property required by the inspection in anticipation of the sale. Then the "stay in place" became official. The offeror indicated a reluctance to enter into a final contract.

8.    Thereafter Counsel directed the Debtor to place a "for sale" sign on the property which prompted the original offeror to renew his offer, through the original broker. A contract was prepared and returned signed by the prospective buyer with a deposit check. In the interim, the posted sign solicited another simultaneous offer which was Five Thousand Dollars ($5,000) more than the pending offer, with no broker. The second offeror had a mortgage pre-approval (Exhibit 1).

9..    After months of negotiations attempting to sell the Premises as represented to this Court and Creditors, the Debtor has found a desirable purchaser and selected the highest and best offer.  The proposed contract of sale for the Premises signed by the Buyer and the Debtor is attached (Exhibit 2).

10.    The Debtor has submitted the proposed contract to his former wife for approval, which Debtor believes will be  received provided his non-debtor ex-wife is allowed a portion of the proceeds for her undivided one half interest in the Premises.

11.    The accepted offer represents an  overall increase in the net proceeds to this Estate  of almost Twenty Thousand Dollars ($20,000).

12. Simultaneous, the Debtor performed reasonable due diligence, and caused an independent appraisal report to be performed which indicated the value of the premises to be Three Hundred and Fifty Thousand Dollars ($350,000). (Exhibit 3)

13.. Debtor believes that the selected purchaser is capable of completing this transaction which represents the highest and best offer based upon Debtors attempts to market properties of the Estate. This is especially so as the accepted offer is made directly by the purchaser and there will be no real estate broker's fees.

14. The amount due to the holder of the first mortgage is approximately $160,000.00, including interest, taxes and expenses advanced by the lender.

15. Neither the Debtor nor his ex-wife ever occupied the Premises, which was always income producing. Due to the Debtor's financial distress, as well as the other personal and health issues affecting Debtor's ability to remain as an attentive landlord, Debtor decided to sell the "Premises".

16. Debtor is awaiting his ex-wife's response, but believes it is forthcoming shortly, and perhaps even before the return date of this motion.

WHEREFORE, the Debtor requests that considering the fact that there is adequate equity in the Premises showing that the secured creditor is adequately protected and a probable sale is imminent, that that the instant application be denied.

Dated:     May 29, 2020
           Chestnut Ridge, New York

BARR LEGAL PLLC

By:_____
      Harvey S. Barr, Esq.
      Attorneys for Debtors
      80 Red Schoolhouse Road, Suite 110
      Chestnut Ridge, New York 10977
To: Woods Oviat Gilman, LLP via ECF    845-352-4080

**Exhibit 1**



# THE FEDERAL SAVINGS BANK

POWERING THE AMERICAN DREAM.

# Pre-Approval Letter

Thursday, May 14, 2020

Dear Joel Herman,

Thank you for choosing The Federal Savings Bank to assist you with financing for a new home. Your application for a mortgage has been preapproved with the following terms:

| | | | |
|---|---|---|---|
| Loan Type: | Conventional | Monthly Principal & Interest Payment: | $1,223 |
| Purchase Price: | $330,000 | Maximum Monthly R.E. Taxes: | $1,100 |
| Loan Amount: | $264,000 | Maximum "PITIA" per month: | $2,473 |

(Principal, Interest, Taxes, Insurance & Association Dues)

This preapproval has been issued based on the financial information you provided and the credit report information we obtained with your permission. Of course, after you decide on a new home, we must still document and verify your income, assets, liabilities and other relevant information, including property value, and title information. Issuance of private mortgage insurance certificate is required, if applicable. Prior to a mortgage commitment being issued, all information will have to be approved by our underwriters, secondary market partners, and private mortgage insurer, if applicable.

This letter is not a commitment to lend money nor is it a commitment as to the above stated terms. You may want to print a copy of this letter to share with real estate brokers or sellers so that they know that you have been preapproved for a mortgage. However, keep in mind that this letter is for informational purposes and should not be used to waive any mortgage contingency requirement under a real estate contract.

After you have found the perfect home and are ready to begin the formal application process, contact me by phone at 845-781-2405 or via email at so that we can begin to process your loan application. Rates and points are subject to change at any time without prior notice and any change in the prevailing rates and points could affect the figures as shown above.

Please note that this preapproval expires 90 days from date of this letter. After that date, please contact us to update your financial information. We look forward to providing you with home financing. If you should have any questions, please feel free to call me at 845-781-2405.

Sincerely,

**Zev Spitzer**
**The Federal Savings Bank | 48 Bakertown Road Suite 303, Monroe, NY 10950**
Mortgage Banker, 1320452
zSpitzer@thefederalsavingsbank.com
Phone: 845-781-2405

Copyright 2013 © The Federal Savings Bank | All rights reserved | www.thefederalsavingsbank.com

Member

**FDIC** 

**Exhibit 2**

# CONTRACT OF SALE
# (ROCKLAND COUNTY APROVED)

THIS CONTRACT HAS BEEN APPROVED BY THE ROCKLAND COUNTY BAR ASSOCIATION

# CONTRACT OF SALE

WARNING: NO REPRESENTATION IS MADE THAT THIS FORM OF CONTRACT FOR THE SALE AND PURCHASE OF REAL ESTATE COMPLIES WITH SECTION 5-702 OF THE GENERAL OBLIGATIONS LAW "PLAIN ENGLISH."

NOTE: FIRE AND CASUALTY LOSSES: This Contract form does not provide for what happens in the event of fire or casualty loss before the title CLOSING. Unless different provision is made in this Contract, Section 5-1311 of the General Obligations Law will apply. One part of that Law makes a PURCHASER responsible for fire and casualty loss upon taking of title to, or possession of, the PREMISES.

| | |
|---|---|
| Date: | CONTRACT OF SALE made as of the _____ day of May, 2020. |
| Parties: | BETWEEN: **LARRY B. WEINSTEIN and LINDA WEINSTEIN** |
| | Address: 7 Stilo Drive, Airmont, NY 10952 |
| | hereinafter called "SELLER," who agrees to sell, and |
| | **JOEL HERMAN** |
| | Address _____ |
| | hereinafter called "PURCHASER," who agrees to buy: |
| Premises: | The property, including all buildings and improvements thereon (the "PREMISES") more fully described on a separate page marked "Schedule A" and the personal property, if any, set forth on "Schedule B" and also known as: |
| | Street Address:        32 Prospect Street, Spring Valley, NY 10977 |
| | Tax Map Designation: 57.24-1-22.1 |
| Purchase Price: | 1.   (a)   The purchase price is ................................................................. **$340,000.00** |
| | Payable as follows: |
| | (b)   On the signing of this Contract, |
| | by check subject to collection:................................................................. **$25,000.00** |
| | In the event that Purchaser finances this purchase with a mortgage loan and Purchaser's lender allows a "seller's concession" then both the Seller and the Purchaser shall cooperate in executing such addendums to the contract of sale which the lender may require.  The Purchaser shall pay all costs associated with the concession including additional transfer tax. |
| | (c)   Balance at Closing:................................................................. **$315,000.00** |
| Escrow of | 2.   (a) The downpayment herein shall be held in escrow by SELLER'S attorney (the "Escrow Agent") Downpayment: In an IOLA account at JP MORGAN CHASE BANK, NA,  until CLOSING, or until this Contract is otherwise rendered null and void pursuant to its terms; and thereafter shall be disbursed to SELLER or PURCHASER, as the case may be. In the event of a dispute as to whom is entitled to such sum, and a Notice of a demand for the down-payment is sent by either of the parties to the other, the Escrow Agent may (i) continue to retain such sum in escrow or (ii) deposit such sum in the Court of pending litigation. However, in the event no notice of objection is received from the other party within 10 days of receipt of the demand notice, the Escrow Agent may release the down-payment to the demanding party. |

(b)  The parties acknowledge that the Escrow Agent is acting solely as a stakeholder at their request and for their convenience, that the Escrow Agent shall not be deemed to be the agent of either of the parties, and that the Escrow Agent shall not be liable to either of the parties for any act or omission on his part unless taken or suffered in bad faith, in willful disregard of this Contract or involving gross negligence. SELLER and PURCHASER shall jointly and severally indemnify and hold the Escrow Agent harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of the Escrow Agent's duties hereunder, except with respect to actions or omissions taken or suffered by the Escrow Agent in bad faith, in willful disregard of this Contract or involving gross negligence on the part of the Escrow Agent. The Escrow Agent shall have no duty to invest any of the funds deposited with him hereunder and shall not be responsible for any action or failure to act, unless said action or failure demonstrates bad faith.

(c)  In the event that the downpayment check given by PURCHASER pursuant to the terms and conditions of this Contract is returned for "Insufficient Funds" or not honored by any bank for any reason whatsoever, not caused by the Purchaser, unless PURCHASER delivers a bank check for said amount to SELLER'S attorney within three (3) days of said dishonor, plus the cost of bank charges incurred as a result of the check being dishonored, this Contract shall be deemed null and void.

**Defaults by Purchaser:**

3.  In the event PURCHASER fails to make any payments due under this Contract, fails or refuses to sign any documents required to close title, refuses to pay any costs required by this Contract or fails to keep any promises made by PURCHASER pursuant to this Contract, SELLER shall provide written notice of PURCHASER'S failure (also known as a "**willfull** default"). If PURCHASER fails to correct a **willfull** default within fifteen (15) days after receipt of notice from SELLER, SELLER may terminate this Contract, and retain the downpayment made hereunder. The amount retained by Seller shall be considered "liquidated damages" based upon an understanding between the parties hereto that SELLER will have suffered damages due to the withdrawal of the PREMISES from sale to the general public. The damages suffered by SELLER as a result thereof will be substantial, but incapable of determination with mathematical precision. It is, therefore, agreed by the parties that the amount retained by SELLER is not a penalty, but rather a mutually beneficial estimate of the damages suffered by SELLER.

**Defaults by Seller:**

4.  If SELLER wilfully defaults hereunder, PURCHASER shall have such remedies as PURCHASER is entitled to at law or in equity, including, but not limited to, specific performance.

**Acceptable Funds:**

5.  All money payable under this Contract, unless otherwise specified, shall be either:
(a)  Cash, or personal check, but not over one thousand ($1,000.00) Dollars;

(b)  Official check of any bank, savings bank, trust company, or saving and loan association having a banking office in the State of New York, payable to the direct order of SELLER; or

(c)  As otherwise agreed to or requested within five (5) days of CLOSING in writing by SELLER or SELLER'S attorney.

**Subject to Provisions:**

6.  The PREMISES are sold and conveyed subject to the following:
(a)  Any state of facts an accurate survey or physical inspection may shown, provided same does not render title uninsurable at normal rates;

(b)  Covenants, restrictions, easements, reservations, consents and Contracts of record, if any, provided same are not violated by the existing dwelling structure and present use thereof;

(c)  Rights of record, if any, acquired by any utility company to maintain and operate lines, wires, cables, poles and distribution boxes, in, over and upon the PREMISES; and

(d)  Laws and governmental regulations that affect the use and maintenance of the PREMISES, provided they are not violated by the buildings and improvements erected on the PREMISES.

**(e)  Subject to the rights of any Tenant(s) in Possession;**

**(f)  Subject to approval of the United States Bankruptcy Court for the Southern District of New York, White Plains, , which shall be applied for by the Sellers , at their sole cost and expense, upon Buyer receiving a mortgage commitment, or sooner, at seller's discretion. The Closing to occur within fourteen (14) days of receipt of an Order of the Court approving the sale..**

The Sale is subject to the stated items above, provided they do not render title uninsurable at standard rates, do not prohibit the current and/or legal use of the Premises, and do not contain any outstanding options, purchase rights or require any affirmative risk or monetary payments and do not contain any provision whereby a future violation will result in forfeiture or reversion of title. Furthermore the sale is subject to any easements and right-of-way of record provided they are located within 10 (ten) feet of the property boundary line.

**Title Company Approval:**

7.    SELLER shall give and PURCHASER shall accept such title as any title underwriter, or any agent in good standing with its underwriter, will be willing to approve and insure in accordance with the standard form of title insurance policy approved by the New York State Insurance Department, subject only to the matters provided for in this Contract.

If available, Seller shall supply any documents (including prior title insurance policies and existing surveys, if any) and/or affidavits reasonably requested by Purchaser's title insurance company and required thereby for the issuance of title insurance policies to Purchaser and Purchaser's mortgagee, if any

**Closing Defined and Form of Deed:**

8.    "CLOSING" means the settlement of the obligations of SELLER and PURCHASER to each other under this Contract, including the payment of the balance of the purchase price to SELLER, and the delivery to PURCHASER of a Bargain & Sale Deed with Covenants Against Grantor's Acts in proper statutory form for recording so as to transfer to PURCHASER full ownership (fee simple title) to the PREMISES, free of all encumbrances except as herein stated. The Deed will contain the covenant by SELLER as required by Section 13 of the Lien Law.

**Corporate Seller:**

9.    If SELLER is a corporation, SELLER shall provide to PURCHASER at the time of CLOSING (a) a resolution of its Board of Directors authorizing the sale and delivery of the Deed; (b) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law; and (c) any and all further documents reasonably required to show that the corporation is authorized to sell and deliver the Deed pursuant to Law. The Deed in such case shall contain a recital sufficient to establish compliance with that Section.

**Closing Date and Place:**

10.   CLOSING will take place at the office designated by PURCHASER'S lender (In Rockland County); or

[X    ]    office of SELLER'S attorney, or

[      ]    other.

On or about Forty Five ( 45 ) days from Purhcaser's receipt of A LOAN COMMITMENT herein, or later as provided for herein.

It is understood by and between the parties that the CLOSING shall take place within the confines of Rockland County and PURCHASER represents that PURCHASER will make application to a lending institution which closes the mortgage loan within the County of Rockland; failing which, PURCHASER shall pay to SELLER, at CLOSING, *the additional sum of $500.00 for a County contiguous to Rockland*, or $750.00 for any other county, to compensate SELLER for their additional legal fees.

**Possession:**

11.   In the absence of a written Contract to the contrary, possession of the PREMISES shall be delivered at CLOSING, with Tenant(s) in possession, and except as to articles of personal property passing to PURCHASER under the terms of this Contract.

**Broker:**

12.   PURCHASER hereby states that PURCHASER has not dealt with any broker in connection with this sale other than **N/A**, and SELLER agrees to pay the broker the commission earned thereby (pursuant to separate Contract).

**Streets and**

13.   This sale includes all of SELLER'S ownership and rights, if any, in any land lying in the bed of

| | |
|---|---|
| Assignment of<br>Unpaid Awards: | any street or highway, opened or proposed, in front of or adjoining the PREMISES to the center line thereof. It also includes any right of SELLER to any unpaid award by reason of any taking by condemnation and/or for any damage to the PREMISES by reason of change of grade of any street or highway. SELLER will deliver, at no additional cost to PURCHASER, at CLOSING, or thereafter, on demand, any documents which PURCHASER may require to collect the award and damages. |

<table>
<tr><td>Seller's<br>Representations:</td><td>14. SELLER makes the following warranties and representations:<br>(a)   The street address of the PREMISES is:<br><br>(b)—<br><br>(c)   The current real estate taxes for the PREMISES <b>are of public record</b>, and SELLER does <b>not have</b> the benefit of any exemptions;<br><br>(d)   To SELLER'S best knowledge, there are no assessments of any type affecting the subject PREMISES; and<br><br>(e)   SELLER is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").<br><br>(f)   The SELLER further represents that:<br>    (a) the Premises and the present use and condition thereof do not violate any applicable deed restrictions or other covenants, restrictions or agreements applicable to the Premises;<br>    (b) no notice of notices of violation of law or municipal ordinances or of Federal, State, County or Municipal or other governmental agency regulations, orders or requirements relating to the Premises have been entered or received by Seller and Seller has no reason to believe that any such note or notice may or will be entered;<br>    (c) there is no action or proceeding (zoning or otherwise) or governmental investigation pending, or, to the knowledge of Seller, threatened or relating to Seller, the Premises or the transaction contemplated by this agreement, nor, to the knowledge of Seller, is there any basis for such action.<br>    (d) Seller has no knowledge of an existing underground oil tank on the Premises.<br>    (e) The Premises is serviced by Suez Water and municipal sewer service.<br>    (f) Seller has full authority to transfer title to the Premises pursuant to this agreement. Except as specified herein, no person, firm or entity has any right to acquire the Premises or any rights or estates in and to the Premises;<br>    (g) the execution of this Contract and Seller's performance hereunder does not violate any judgment, order, injunction, decree or award of any court, administrative agency or governmental body applicable to Seller or the Premises; and,<br>    (h) the Premises abut a public road<br>    (i) That the premises is not part of an HOA.<br>(g) The Seller Larry Weinstein is a Chapter 11 Debtor in Possession in a Bankruptcy case pending in the United States Bankruptcy Court for the Southern District of New York, at White Plains under case number 19-23827RDD.</td></tr>
<tr><td>Mortgage<br>Contingency:</td><td>15.   (a)   PURCHASER'S obligation under this Contract is subject to, and contingent upon, PURCHASER obtaining, at PURCHASER'S own cost and expense, a mortgage commitment in the sum of <b>$264,000.00</b> repayable over a period of thirty (30) years with interest at the prevailing rate per annum, as shall be then charged by such lending institution, registered mortgage broker or licensed mortgage banker, plus any applicable "points," discount charges or loan origination fees. PURCHASER warrants and represents that PURCHASER will, diligently and in good faith, apply for said mortgage no later than seven (7) days after the receipt of a fully executed copy of this Contract by PURCHASER'S attorney, and as the same may be extended by the parties or their attorneys, and will promptly furnish all reports, documents, verifications and/or fees required in connection therewith. PURCHASER agrees to promptly send to SELLER'S attorney a copy of any bank letter received by PURCHASER granting or declining the mortgage commitment. In the event PURCHASER does not obtain said mortgage commitment by <b>Forty Five (45) Days from Purchaser</b> s receipt of the fully-executed contract</td></tr>
</table>

**herein**, after the exercise of good faith, then this Contract shall be deemed null and void at the option of either party to this Contract, communicated to the other party, or to the other party's attorney, in writing, via the United States Postal System; and SELLER'S sole liability thereunder shall be the return of all monies paid pursuant to this Contract. If, however, prior to actual denial of PURCHASER'S mortgage application, PURCHASER elects to cancel this Contract pursuant to the provisions of this Paragraph; SELLER may, by notice to PURCHASER'S attorney given within three (3) days thereafter, unilaterally extend the time, for an additional period of not more than thirty (30) days, for PURCHASER to obtain the said mortgage commitment; during which period of time, PURCHASER shall continue to diligently pursue PURCHASER'S efforts to obtain such mortgage commitment.

(b)   A commitment requiring PURCHASER to sell any property, or to discharge any debt, as a condition precedent to closing of the mortgage loan, shall be deemed to be a "mortgage commitment" which shall satisfy the contingent aspect of Paragraph 15(a); however, a Commitment Letter which is subject to an appraisal of the PREMISES, or a credit report of PURCHASER, or a P.M.I. application, and/or verification of PURCHASER'S income, assets or source of funds shall not be deemed to be a "mortgage commitment" for purposes of Paragraph 15(a).

(c)   If PURCHASER is unable to obtain a commitment for such mortgage, SELLER'S attorney shall, upon request, have the right to see copies of the application filed by PURCHASER with the proposed mortgagee. If requested, PURCHASER will request, in writing, that the proposed mortgagee send a copy of the application to SELLER'S attorney.

(d)   In the event that PURCHASER receives a commitment for a new first mortgage in a sum less than the amount applied for, SELLER may reduce the Purchase Price by the amount of the difference between the mortgage applied for and the mortgage obtained and PURCHASER shall not have the right to declare this Contract null and void, if such modification is acceptable to PURCHASER'S mortgage lender.

(e)   The Purchasers believe that, to the best of their knowledge, they are qualified from and income and credit standpoint, for the mortgage that they are seeking from the lending institution. Purchasers represent that they are applying for the mortgage loan soley in their own names and based soley upon their individual income, and that the mortgage application will not be processed by the lending institution on the basis of any additional income requirements for any other co-borrower, who is not a signatory to this contract of sale.

(f)   It is specifically understood and agreed that all of the expenses related to the mortgage closing shall be borne soley by the Purchasers, and that the sellers shall have no responsibility for the payment of fees, escrows or expenses to the lending institution. It is further understood and agreed, that the fact that the Seller had consented to making this contract contingemnt upon the ability of the Purchasers to secure a mortgage loan commitment does not imply any consent on the part of the seller to accept any obligations which may be imposed by the Purchaser's lending institution either with regard to the condition of the premises or the closing procedures of the lender, which would in any way amplify or extend the obligation of the Seller that are otherwise set forth in this contract of sale.

| | |
|---|---|
| Mortgagee's Certificate or Letter as to Existing Mortgage(s): | 16.   If the PREMISES are encumbered by an existing mortgage(s), SELLER agrees to deliver to PURCHASER at closing a duly executed Satisfaction of such Mortgage(s) in proper recordable form for such mortgage(s) together with the underlying note(s) and mortgage(s). SELLER shall pay the fees for recording such Satisfaction of Mortgage(s). If, however, the holder of a mortgage is a bank or other institution as defined in Section 274-a, Real Property Law, SELLER may, instead of the Satisfaction, furnish an unqualified letter signed by the holder of such existing mortgage(s) dated not more than thirty (30) days before CLOSING certifying the amount of the unpaid principal and interest and the per diem interest rate. |
| Compliance with State and Municipal Department | 17.   (a)   SELLER will comply with all notes or notices of violations of law, municipal ordinances, order or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire, health and labor conditions affecting the PREMISES at the date of CLOSING. The PREMISES shall be transferred free of them at CLOSING and this provision shall survive |

| | |
|---|---|
| Violations and Orders: | CLOSING. SELLER shall furnish PURCHASER with any authorizations necessary to make the searches that could disclose these matters. |

(b) Orders: If the PREMISES are located within a jurisdiction which requires personal inspection of the PREMISES, SELLER will reasonably cooperate in obtaining the Certificate of Occupancy and Violation Searches.

| | |
|---|---|
| Violations of Record: | 18. If the cost of the removal of violations required to be removed by SELLER pursuant to the provisions of this Contract shall be in excess of One Thousand Five Hundred ($1,500.00) Dollars, SELLER is hereby granted an option to withdraw from this Contract; in which event, SELLER shall refund to PURCHASER the monies paid on the execution hereof, whereupon this Contract shall become null and void without further liability from either party to the other, unless PURCHASER shall agree to take title subject to said violations and assume the performance thereof and receive an abatement in reduction of the Purchase Price in the sum of One Thousand Five Hundred ($1,500.00) Dollars. The options herein granted shall be exercised by notice in writing by either party, or their attorneys, on or before the time fixed for CLOSING, by certified mail, return receipt requested. |
| Conditions of Closing: | 19. SELLER shall deliver, prior to CLOSING, to PURCHASER a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a |

[X  ]    one family dwelling; or

[    ]    two family dwelling

at the date of CLOSING.

| | |
|---|---|
| Installment Assessment: | 20. If at the time of CLOSING the PREMISES are affected by an assessment, which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Contract all the unpaid installments shall be considered due and are to be paid by SELLER at CLOSING, unless the assessment is part of the State, County, Town taxes and/or Village taxes (if applicable), in which event same shall be adjusted in accordance with Paragraph 21 herein. |
| Apportionments: | 21. (a)   The following are to be apportioned as of Midnight of the date before CLOSING: Taxes, water charges and sewer rents, fuel, if any, and municipal solid waste fees, if any. |

(b)  Tax apportionments shall be made in accordance with the following procedure (the Rockland County Bar Association Resolution):

(1)  State, County and Town Taxes shall be adjusted for the tax year from January 1st through December 31st;

(2)  School Taxes shall be adjusted for the tax year from September 1st through August 31st;

(3)  Village Taxes shall be adjusted for the tax year from June 1st through May 31st (unless the subject Village (i.e., Montebello, Airmont, Sloatsburg or New Hempstead) utilizes a different tax year, in which case, such tax year shall be the basis for adjustment);

(4)  The taxes shall be computed on a 365 day basis; and

(5)  PURCHASER shall pay the tax for the day upon which the adjustment is made (the day of CLOSING).

(c)  If CLOSING shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

(d)  Any errors or omissions in computing apportionments at CLOSING shall be corrected. This provision shall survive CLOSING, but in no event shall survival exceed sixty (60) days from the actual date of CLOSING.

| | |
|---|---|
| Water Meter | 22. If there are water meter(s) and other utilities meters on the PREMISES, SELLER shall furnish a |

| | |
|---|---|
| Readings: | reading for each meter to a date not more than Five (5) days before CLOSING and the unfixed utility meter charges, if any, shall be apportioned on the basis of such last reading. |
| Allowance for Unpaid Items: | 23. SELLER has the option to credit PURCHASER as an adjustment toward the Purchase Price with the amount of any unpaid taxes, assessments or utility charges, together with any interest and penalties thereon, to a date not less than three (3) business days after CLOSING, provided that official bills therefor, computed to said date, are produced at CLOSING. |
| Use of Purchase Price to Pay Seller Obligations: | 24. If there is anything else affecting the sale of which SELLER is obligated to pay and discharge at CLOSING, SELLER may use any portion of the balance of the purchase price to discharge same. As an alternative, SELLER may deposit money with the Title Insurance Company employed by PURCHASER and required by it to assure its discharge; but only if the Title Insurance Company will insure PURCHASER'S title clear of the matter or insure against its enforcement out of the PREMISES, and if acceptable to the mortgage lender. Upon request, made within a reasonable time before CLOSING, PURCHASER agrees to provide separate certified checks as requested to assist in clearing up these matters. |
| Affidavit as to Judgments, Bankruptcies, etc.: | 25. If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of SELLER, SELLER shall deliver a detailed affidavit satisfactory to the Title Insurance Company insuring PURCHASER at CLOSING showing that they are not against SELLER; the foregoing obligation shall survive CLOSING or the same shall be addressed in an Order of the Bankruptcy Court relative to the sale. |
| Deed Transfer and Recording Taxes: | 26. At CLOSING, SELLER shall deliver a check or other acceptable funds payable to the order of the Rockland County Clerk, or to the Title Insurance Company, in the amount of any applicable transfer tax payable by reason of the recording of the Deed, together with any required tax return. PURCHASER agrees to duly complete the tax return and to cause the check(s) and the tax return to be delivered to the Title Insurance Company representative at CLOSING. |
| Purchaser's Lien: | 27. All money paid on account of this Contract, the reasonable expenses of examination of the title to the PREMISES and any survey and survey inspection charges are hereby made liens on the PREMISES and collectable out of the PREMISES. Such liens, however, shall not continue after default in performance of this Contract by PURCHASER (the term "default" being herein defined in Paragraph 3 above). |
| Seller's Inability to Convey; Limitation of Liability: | 28. If SELLER is unable to transfer title to PURCHASER in accordance with this Contract, SELLER'S sole liability shall be to refund all money paid on account of this Contract, plus all charges incurred for: (i) examining the title; (ii) Liability: any appropriate additional searches made in accordance with this Contract; (iii) survey and survey inspection charges; (iv) prepaid non-refundable lenders fees, not to exceed 1% of the mortgage amount; (v) credit check and appraisal fees in the actual amounts incurred; and (vi) engineers inspection fees: The total of (i) – (vi) above shall not to exceed One Thousand ($1,000.00) Dollars. Upon such refund and payment, this Contract shall be considered canceled, and neither SELLER or PURCHASER shall have any further rights against the other party. Notwithstanding anything contained herein, the Seller shall be obligated to cure and satisfy all voluntary mortgages, liens and encumbrances on the Property and shall cause all title exceptions with respect to such voluntary mortgages, liens and encumbrances to be omitted from the title report at or prior to closing. |
| Condition of Premises: | 29. The PREMISES are sold in an "AS IS" physical condition and SELLER makes no representations of any kind or nature, the Buyer haveing had the opportunity to perform his own due diligence. Seller agrees to maintain the premises in it's existing condition, normal wear and tear excepted, to the day of closing. |
| Maintenance: | 30. It shall be the obligation of SELLER to maintain the PREMISES, both interior and exterior, in present condition, except as may be otherwise set forth herein, until the transfer of possession of the PREMISES to PURCHASER. |

| | |
|---|---|
| Inspection: | 31. PURCHASER shall have access to the PREMISES at reasonable times upon reasonable notice and within forty eight (48) hours prior to CLOSING or taking possession, with all utilities in service, in order to ascertain the condition of the PREMISES with regard to Paragraphs "11," "29" and "30" herein. |
| Notices: | 32. All notices required or permitted pursuant to this Contract shall be in writing and forwarded to the other party's attorney at the office address of such party's attorney via the United States Postal Service, certified mail, return receipt requested; and such notice shall be deemed given on the third (3rd) business day following mailing of such notice. Alternatively, a notice may be delivered by an overnight delivery service, or by facsimile *or via email*, but in any case, such notice shall be deemed made upon the date such notice is actually received by the attorney. However, a notice of default or cancellation shall only be made by certified mail return receipt requested. |
| Closing Funds: | 33. PURCHASER does hereby personally guarantee all funds that shall be transmitted by PURCHASER, or on their behalf, to SELLER at the time of CLOSING as and for the balance of the Purchase Price and apportionments; it being understood that this personal guaranty shall survive the delivery of the Deed. |
| Headings: | 34. The paragraph headings in this Contract are for convenience only and have no legal significance. |
| Assignment: | 35. This Contract may not be assigned or transferred by PURCHASER without the prior express written permission of SELLER. |
| Inspections: | 36. Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or other property included in this sale, given or made by Seller or its representatives, except as represented in paragraph 29 above, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing, without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. |

Lead-Based Paint. (a) At the Purchaser's sole expense, the Purchaser shall have the right to conduct a risk assessment or inspection of possible lead-based paint hazards on the dwelling, which was constructed prior to 1978. This assessment or inspection shall be performed within ten days hereof. If the results of such test indicate that the presence of lead-based paint hazards, a copy of the report issued by the risk assessor inspector together with a written contract addendum listing the specific existing deficiencies and recommended remedial action together with the cost thereof shall be served upon the Seller's attorney within five days from the date of the report. Upon receipt of such Notice, the Seller shall have the option of, at the Seller's expense, of correcting the condition(s) prior t closing and providing a certification from a risk assessor or inspector confirming that the corrective action was taken. Seller shall give Purchaser written notice of such election within five days from receipt of the report and addendum. In the event that the Seller notifies the Purchaser that the Seller declines to exercise that option, then the Purchaser shall have the option to withdraw from this contract upon prompt notice to the Seller and, in such case, the Purchaser shall be entitled to a refund of the Downpayment and neither party shall have any further obligations under this Contract.

(b) In the event that Seller exercises the option to cancel this contract, the Purchaser may nevertheless have the option to waive the report and to proceed with the purchase of the premises. Said option by the Purchaser must be exercised in writing within three days after receipt of notice that Seller has declined to take remedial action.

(c) If the Purchaser shall fail to conduct a timely inspection or fail to serve timely notice, the provisions of this paragraph shall be deemed waived and the Purchaser, at its own cost and expense, shall be solely responsible to provide any certificates as may be required by any mortgagee or insurer of the mortgage.

(d)    The Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the Premises and has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the Premises.

**Deed Description:**    37.    SELLER shall, at CLOSING, include in the Deed of Conveyance such description of the PREMISES as may be required by the lending institution, or the Title Insurance Company insuring the conveyance of title. In the event such description is based upon a new survey, such survey shall also be certified or guaranteed to SELLER.

**Changes Must be in Writing:**    38.    This Contract may not be changed or canceled, except in writing, and signed by the parties or their respective attorneys.

**Contract Binding:**    39.    This Contract shall also apply to and bind the distributees, heirs, executors, administrators, successors and permitted assigns of the respective parties.

**Singular also Means Plural:**    40.    Any singular word or term herein shall also be read as in the plural, and vice versa, whenever the sense of this Contract may require it.

**Conflicts:**    41.    This Contract constitutes the entire Contract between the parties and shall not be modified or altered by any Contracts, warranties or representations, whether expressed or implied, unless set forth in writing and executed by all of the parties hereto or their respective attorneys.

**Attorney Authorizations:**    42.    EACH OF THE PARTIES HEREBY AUTHORIZE THEIR ATTORNEYS TO AGREE IN WRITING TO ANY CHANGES IN DATE AND TIME PERIODS PROVIDED FOR IN THIS CONTRACT.

○    **Pursuant to the Property Condition Disclosure Act of 2001, the Seller has elected to provide the Purchaser with a Five Hundred Dollar ($500.00) credit at closing in lieu of providing the Purchaser with the Property Disclosure Statement. Any disclosure provide prior to the signing of this contract of sale is null and void.**

○    **In any interpretation of the terms of this contract, none of it's terms shall be construed against the seller by reason of the fact that the seller or it's attorneys drafted the contract since the final contract is the result of negotiations by parties having equal bargaining power, with each of the parties having access to legal representation of their own selection.**

○    **This Contract shall not be binding or effective until fully executed by both Parties and delivered by Seller to Purchaser or Purchaser's Attorney.**

○    **Digital, electronic or scanned copies of original handwritten signatures shall be considered valid.**

○    **This Agreement may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.**

○    **Escrowee shall be deemed to have accepted the escrow provisions of this Contract even in the absence of its signature on the Contract by depositing the Contract Deposit in its designated bank account.**

- This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment made without such consent shall be void.

- If applicable, the Seller shall comply with the Rockland County Well Water Statute, and the Seller shall comply with Executive Law 375(5) pertaining to smoke detectors and carbon monoxide detectors.

- The seller(s) and purchaser(s) hereby authorize the delivery of a copy of the Seller's Closing Disclosure (CD), prepared by the lender, to the real estate agents/brokers named herein.

_Larry B Weinstein_ 5/23/2020

LARRY B WEINSTEIN, Seller          Date

_Joel Herman_          5/19/2020

JOEL HERMAN, Purchaser          Date

_____

LINDA WEINSTEIN, Seller          Date

_____

, Purchaser          Date

## SCHEDULE "B"

## PERSONAL PROPERTY RIDER

Personal Property: (a) The sale also includes all fixtures and articles of personal property attached to or used in connection with the PREMISES, unless specifically excluded below. SELLER states that they are paid for and owned by SELLER free and clear of any lien other than the EXISTING MORTGAGE(S). They include but are not limited to:

Air Conditioning Equipment and Installations, Awnings, Bathroom and Kitchen Cabinets, Clothes Dryer, Dishwasher, Door Mirrors, Fencing, Flagpole, Freezer, Garbage Disposal Unit, Heating/Lighting/Cooking fixtures, Mail Box, Mantels, Outdoor Statuary, Oven, Plumbing, Pumps, Range, Refrigerator, Screens, Shades, Shrubbery, Storm Doors, Storm Windows, Switch Plates and Door Hardware, Television Aerials, Tool Shed, Venetian Blinds, Wall to Wall Carpeting, Washing Machine, Weather Vane, Window Boxes, Window Treatments, and built-ins, not excluded below, *and only to the extent that the same exist on the subject premises, and in their present condition, reasonable wear and tear excepted.*

Excluded from this sale are furniture and household furnishings:

AS PER MLS LISTING # _____

Prior to the Closing, Seller, at its own expense, shall remove the personal property located at the Premises and not included in the sale contemplated hereby and shall repair all damage to the Premises resulting from the removal of such personal property. Any of Seller's personal property not included in the sale contemplated hereby which is not removed from the Premises shall be deemed abandoned property. Purchaser may cause any such abandoned property to be removed from the Premises. The provisions of this paragraph shall survive the Closing.

(c) Lighting fixtures permitted to be removed by SELLER, shall be replaced by SELLER at SELLER'S expense, with standard "builders" fixtures.

(d) The personal property to be conveyed pursuant to this Contract shall only be to the extent that said personal property presently exists upon the PREMISES, and shall be deemed transferred to and conveyed to PURCHASER under the Deed of Conveyance to be delivered, but it is understood and agreed that no part of the purchase price shall be deemed to have been paid PURCHASER for same and that the property transferred hereunder shall be deemed to have been transferred without consideration.

(e) If, however, it is determined that, notwithstanding the foregoing Paragraph, there is a sales tax due for the transfer of any of the items noted in this Contract, PURCHASER shall hold harmless and indemnify SELLER for any sales tax liability. This Paragraph shall survive CLOSING.

## DISCLOSURE OF INFORMATION AND ACKNOWLEDGMENT
## LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

Lead Warning Statement

## DISCLOSURE OF INFORMATION AND ACKNOWLEDGMENT
## LEAD-BASED PAINT AND/OR LEAD-BASED PAINT HAZARDS

Lead Warning Statement

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to proved the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

Seller's Disclosure *(initial)*

_____ (a) Presence of lead-based paint and/or lead-based paint hazards *(check one below)*:

⸻⸻⸻⸻ Known lead-based paint and/or lead-based paint hazards are present in the housing

*(explain)*: _____

⸻⸻⸻⸻ XL__ Seller has no knowledge of lead-based paint and/or lead-based hazards in the housing.

_____ (b) Records and Reports available to the seller *(check one below)*:

⸻⸻⸻⸻ Seller has provided the purchaser with all available records and reports pertaining to lead-based paint and/or lead-based hazards in the housing *(list documents below)*:

_____

⸻⸻⸻⸻ X Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

Purchaser's Acknowledgment *(initial)*

_____ (c) Purchaser has received copies of all information listed above.

_____ (d) Purchaser has received the pamphlet *Protect Your Family From Lead in Your Home*.

_____ (e) Purchaser has *(check one below)*:

⸻⸻⸻⸻ Received a 10-day opportunity (or mutually agreed-upon period) to conduct a risk assessment or inspection of the presence of lead-based paint or lead-based paint hazards; or

⸻⸻⸻⸻ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

Agent's Acknowledgment *(initial)*

_____ (f) **Agent has informed the seller of the seller's obligation under 42 U.S.C. 4852 d and is aware of his/her responsibility to ensure compliance.**

Certification of Accuracy

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

| | | | |
|---|---|---|---|
| _(signature)_ | 5/19/2020 | _(signature)_ | 5/25/2020 |
| Purchaser | Date | Seller | Date |

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| Purchaser | Date | Seller | Date |

**Exhibit 3**

# APPRAISAL OF



## LOCATED AT:

32 Prospect Street
Spring Valley, NY 10977

## CLIENT:

Larry Weinstein
32 Prospect Street
Spring Valley, NY, 10977

## AS OF:

April 6, 2020

## BY:

Bruce J. Potash
Certified Residential Appraiser

April 6, 2020


Larry Weinstein
Larry Weinstein
32 Prospect Street
Spring Valley, NY, 10977


File Number:   BG2004131



Dear Sir/Madam:

In accordance with your request, I have appraised the real property at:

32 Prospect Street
Spring Valley, NY  10977


The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of   April 6, 2020                    i s :

$350,000
Three Hundred Fifty Thousand  Dollars


The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.



Respectfully Submitted,


Bruce J. Potash
Certified Residential Appraiser



BJP

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

## PURPOSE

| | |
|---|---|
| Client Name/Intended User | Larry Weinstein |
| | E-mail lbw228@optonline.net |
| Client Address 32 Prospect Street | City Spring Valley   State NY   Zip 10977 |
| Additional Intended User(s) None noted | |

Intended Use Opinion of current value

## SUBJECT

| | |
|---|---|
| Property Address 32 Prospect Street | City Spring Valley   State NY   Zip 10977 |
| Owner of Public Record Weinstein, Larry | County Rockland |
| Legal Description 57.24-1-22.1 | |
| Assessor's Parcel # Section: 57.24 Block: 1 Lot: 22.1 | Tax Year 2018   R.E. Taxes $ 2,375 |
| Neighborhood Name Spring Valley | Map Reference AAA TripTik   Census Tract 0123.00 |
| Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe) | |

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

| | | |
|---|---|---|
| Prior Sale/Transfer Date 10/09/2002 | Price $0 | Source(s) Public Records |

## SALES HISTORY

Analysis of prior sale or transfer history of the subject property (and comparable sales, if applicable)   Research of the MLS, Real Record, and public records indicate the subject is not currently listed for sale or transferred title in the past 36 months. Research of the MLS, Real Record, and public records indicate the following: Comparable #1 has no prior title transfer for the past 12 months; Comparable #2 has no prior title transfer for the past 12 months; Comparable #3 has no prior title transfer for the past 12 months.

Offerings, options and contracts as of the effective date of the appraisal   None noted

## NEIGHBORHOOD

| Neighborhood Characteristics | | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|---|
| Location | [ ] Urban [X] Suburban [ ] Rural | | | Property Values | [X] Increasing [ ] Stable [ ] Declining | | PRICE $(000) | AGE (yrs) | One-Unit | 80 % |
| Built Up | [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply | [ ] Shortage [X] In Balance [ ] Over Supply | | | | 2-4 Unit | 6 % |
| Growth | [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time | [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | 236 Low | 7 | Multi-Family | 2 % |
| Neighborhood Boundaries | CR 74 is to the north; SR 59 is to the south; SR 35A is to the east; SR | | | | | | 490 High | 49 | Commercial | 12 % |
| 45 is to the west | | | | | | | 348 Pred | 33 | Other | % |

Neighborhood Description   The subject is located in a well established residential area improved with various style and aged single family homes in the PO Delivery Area of Spring Valley in the Town of Ramapo in the county of Rockalnd. All support facilities, schools and shopping appear adequate and within reasonable driving distances.

Market Conditions (including support for the above conclusions)

## SITE

| | | |
|---|---|---|
| Dimensions See Plat Map This Report | Area 5227 sf | Shape Rectangular   View Residential |
| Specific Zoning Classification R-25 | Zoning Description Medium Density Residential | |
| Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe) | | |

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe. The subject is legally permissible, financially feasible, physically possible and maximally productive to support the highest and best use conclusion.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | 150 Amps | Water | [X] | Municipal | Street Asphalt | [X] | |
| Gas | [X] | Municipal | Sanitary Sewer | [X] | Municipal | Alley None noted | | |

Site Comments   Site is moderately landscaped, typical for the neighborhood.

## IMPROVEMENTS

| GENERAL DESCRIPTION | | FOUNDATION | | EXTERIOR DESCRIPTION materials | | INTERIOR materials | |
|---|---|---|---|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit | | [X] Concrete Slab [ ] Crawl Space | | Foundation Walls Concrete | | Floors Wood / Tile | |
| # of Stories 2 | | [ ] Full Basement [ ] Partial Basement | | Exterior Walls Vinyl | | Walls Drywall | |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | | Basement Area 0 sq. ft. | | Roof Surface Asphalt Shingle | | Trim/Finish Painted | |
| [X] Existing [ ] Proposed [ ] Under Const. | | Basement Finish 0% | | Gutters & Downspouts Yes/Yes | | Bath Floor Ceramic Tile | |
| Design (Style) Semi-Detached | | [ ] Outside Entry/Exit [ ] Sump Pump | | Window Type Double Hung | | Bath Wainscot Ceramic Tile | |
| Year Built 2002 | | | | Storm Sash/Insulated Aluminium | | Car Storage [X] None | |
| Effective Age (Yrs) 18 | | | | Screens Yes | | [ ] Driveway # of Cars | |
| Attic [ ] None | | Heating [ ] FWA [X] HW [ ] Radiant | | Amenities | WoodStove(s) # 0 | Driveway Surface Blacktop | |
| [ ] Drop Stair [ ] Stairs | | [ ] Other Fuel Gas | | [ ] Fireplace(s) # 0 | [ ] Fence None | [ ] Garage # of Cars | |
| [ ] Floor [ ] Scuttle | | Cooling [X] Central Air Conditioning | | [X] Patio/Deck Deck | [ ] Porch None | [ ] Carport # of Cars 0 | |
| [ ] Finished [ ] Heated | | [ ] Individual [ ] Other | | [ ] Pool None | [ ] Other | [ ] Att. [ ] Det. [X] Built-in | |
| Appliances [X] Refrigerator [X] Range/Oven [ ] Dishwasher [ ] Disposal [X] Microwave [X] Washer/Dryer [ ] Other (describe) | | | | | | | |

Finished area above grade contains:   10 Rooms   4 Bedrooms   2 Bath(s)   1,966 Square Feet of Gross Living Area Above Grade

Additional Features   Appliances are energy efficient models, windows are insulated models with screens.

Comments on the Improvements   No physical or functional inadequacies noted. No external obsolescence noted or observed. No immediate repairs or modernization needed. The foundation appears to have no visible splits or cracks, there is no dampness in the partial basement. Each room has adequate electrical outlets and switches, water pressure appears adequate with the sink on and the toilet flushing. The scuttle attic has not noticeable staining and appears dry. The roof appears in working condition with no shingles lifting or missing.



# Residential Appraisal Report

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO 2 | | COMPARABLE SALE NO 3 | |
|---|---|---|---|---|---|---|---|
| Address | 32 Prospect Street Spring Valley, NY 10977 | 16 Rusten Lane Nanuet, NY 10954 | | 10 Hazel Court Spring Valley, NY 10977 | | 9 Pauline Court Spring Valley, NY 10977 | |
| Proximity to Subject | | 0.47 miles SE | | 0.56 miles NE | | 0.47 miles NE | |
| Sale Price | $ | | 315,000 | | 400,000 | | 375,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq ft. | $ 192.43 sq ft. | | $ 245.40 sq ft. | | $ 197.37 sq ft. | |
| Data Source(s) | | OneKeyMLS#4975522 ;DOM: 44 | | OneKeyMLS#4926247 ;DOM: 48 | | OneKeyMLS#4909093 ;DOM: 15 | |
| Verification Source(s) | | OneKeyMLS/PrprtyShrk/NYTaxRec | | OneKeyMLS/PrprtyShrk/NYTaxRec | | OneKeyMLS/PrprtyShrk/NYTaxRec | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | | ArmLth | | ArmLth | | ArmLth | |
| Concessions | | Conv;$0 | | Conv;$0 | | Conv;$0 | |
| Date of Sale/Time | | 10/18/2019 | | 08/23/2019 | | 08/15/2019 | |
| Location | N;Res | N;Res | | N;Res | | N;Res | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5227 sf | 2614 sf | 2,600 | 10019 sf | -4,800 | 17860 sf | -12,600 |
| View | N;Res | N;Res | | N;Res | | N;Res | |
| Design (Style) | Semi-Detached | Semi-Detached | | Semi-Detached | | Semi-Detached | |
| Quality of Construction | Frame / Avg | Frame / Avg | | Frame / Avg | | Frame / Avg | |
| Actual Age | 18 | 42 | 0 | 32 | 0 | 33 | 0 |
| Condition | Average | Average- | 31,500 | Average | 0 | Average | |
| Above Grade Room Count | Total 10 Bdrms 6 Baths 2 | Total 5 Bdrms 3 Baths 2.1 | -3,000 | Total 5 Bdrms 3 Baths 2.1 | -3,000 | Total 8 Bdrms 4 Baths 2.1 | -3,000 |
| Gross Living Area | 1,966 sq ft. | 1,637 sq ft. | 10,000 | 1,630 sq ft. | 10,000 | 1,900 sq ft. | 2,000 |
| Basement & Finished | None | Full Basement | -5,000 | Full Basement | -5,000 | Slab | |
| Rooms Below Grade | None | Finished | -5,000 | Finished | -5,000 | | |
| Functional Utility | Typical | Typical | | Typical | | Typical | |
| Heating/Cooling | G/HWBB C/Air | G/FWA C/Air | | G/HWBB None | 5,500 | G/FWA C/Air | |
| Energy Efficient Items | Appliances | Appliances | | Solar | -3,500 | Appliances | |
| Garage/Carport | Driveway | 2 Car Garage | -5,500 | 1 Car Garage | -3,500 | 1 Car Garage | -5,500 |
| Porch/Patio/Deck | Patio | Patio | | Deck | | Deck | |
| Other | None | None | | None | | None | |
| Other | None | None | | None | | None | |
| Other | Second kitchen | None | 5,500 | None | 5,500 | None | 5,500 |
| Net Adjustment (Total) | | +[ ] -[X] | 31,100 | +[ ] -[X] | 3,800 | +[ ] -[X] | 13,600 |
| Adjusted Sale Price of Comparables | | Net Adj 9.9% Gross Adj 21.6% | 346,100 | Net Adj -0.9% Gross Adj 11.5% | 396,200 | Net Adj -3.6% Gross Adj 7.6% | 361,400 |

Summary of Sales Comparison Approach  The comparables used in this appraisal report are the best available for the use in support of a market value estimate of the subject property. GLA is adjusted at $30 per Sq. Ft. site is adjusted at $1.00 per sq. Ft. All other adjustments are amenity refinements which reflect the ascribed value for the inferior/superior amenity characteristic when compared to the subject.

## COST APPROACH TO VALUE

Site Value Comments  The subject market area is a fully developed community with no land sales of record for the past 12 months. Land value is this appraisal report was estimated by using the abstraction method.

| ESTIMATED [ ] REPRODUCTION OR [X] REPLACEMENT COST NEW | OPINION OF SITE VALUE | | = $ 180,000 |
|---|---|---|---|
| Source of cost data Marshall & Swift | Dwelling 1,966 Sq Ft @ $ 115.00 | | = $ 226,090 |
| Quality rating from cost service 1.35  Effective date of cost data 2020 | Sq Ft @ $ | | = $ 0 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) Patio, C/Air | | | = $ 8,000 |
| Cost approach is based on nationally published data thru Marshall & Swift. | Garage/Carport 96 Sq Ft @ $ | | = $ 0 |
| | Total Estimate of Cost New | | = $ 234,090 |
| | Less 60 Physical  Functional  External | | |
| | Depreciation $70,227 | | = $ 70,227 |
| | Depreciated Cost of Improvements | | = $ 163,863 |
| | "As is" Value of Site Improvements | | = $ 11,500 |
| | INDICATED VALUE BY COST APPROACH | | = $ 355,400 |

## INCOME APPROACH TO VALUE

Estimated Monthly Market Rent $ N/A  X Gross Rent Multiplier N/A  = $ 0  Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM)

Indicated Value by: Sales Comparison Approach $ 350,000  Cost Approach (if developed) $ 355,400  Income Approach (if developed) $ 0

All three approaches to market valuation are considered in the development of the Appraisers opinion of market value of the subject property. Most weight is given to the sales comparison approach. The income approach was considered but not used as the majority of units in the subject project are purchased for owner occupancy.

This appraisal is made [X] "as is", [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, [ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, [ ] subject to the following

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property that is the subject of this report is $ 350,000  as of 04/06/2020 , which is the effective date of this appraisal.



B&G Potash, Inc.

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| | 32 Prospect Street | 69 S Cole Court | | 10 Mila Lane | | 6 Paquin Lane | |
| Address | Spring Valley, NY 10977 | Spring Valley, NY 10977 | | Spring Valley, NY 10977 | | Spring Valley, NY 10977 | |
| Proximity to Subject | | 1.15 miles SW | | 0.44 miles SW | | 0.23 miles NE | |
| Sale Price | $ | $ 379,000 | | $ 340,000 | | $ 344,900 | |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 165.65 sq. ft | | $ 241.48 sq. ft | | $ 184.24 sq. ft | |
| Data Source(s) | | OneKeyMLS#4526714 ,DOM: 632 | | OneKeyMLS#6023106 ,DOM 22 | | OneKeyMLS#4929679 ,DOM 321 | |
| Verification Source(s) | | OneKeyMLS/PrprtyShrk/NYTaxRec | | OneKeyMLS/PrprtyShrk/NYTaxRec | | OneKeyMLS/PrprtyShrk/NYTaxRec | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | | ArmLth | | Active | | Active | |
| Concessions | | Cash;$0 | | $0 | | $0 | |
| Date of Sale/Time | | 05/02/2019 | | Active Listing | -5,100 | Active Listing | -5,175 |
| Location | N;Res | N;Res | | N;Res | | N;Res | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 5227 sf | 11326 sf | -6,100 | 4356 sf | 900 | 10454 sf | -5,200 |
| View | N;Res | N;Res | | N;Res | | N;Res | |
| Design (Style) | Semi-Detached | Semi-Detached | | Semi-Detached | | Semi-Detached | |
| Quality of Construction | Frame / Avg | Frame / Avg | | Frame / Avg | | Frame / Avg | |
| Actual Age | 18 | 31 | 0 | 13 | 0 | 24 | 0 |
| Condition | Average | Average | | Average | | Average | |
| Above Grade | Total / Bdrms / Baths 10 / 6 / 2 | Total / Bdrms / Baths 9 / 4 / 3 | -6,000 | Total / Bdrms / Baths 6 / 3 / 3 | -6,000 | Total / Bdrms / Baths 9 / 5 / 2 | 0 |
| Gross Living Area | 30.00  1,966 sq. ft. | 2,288 sq. ft. | -9,500 | 1,408 sq. ft. | 16,500 | 1,872 sq. ft | 3,000 |
| Basement & Finished | | Slab | | Full Basement | -5,500 | Slab | |
| Rooms Below Grade | None | None | | Unfinished | 0 | None | |
| Functional Utility | Typical | Typical | | Typical | | Typical | |
| Heating/Cooling | G/HWBB C/Air | G/HWBB None | 5,500 | G/HWBB None | 5,500 | G/HWBB None | 5,500 |
| Energy Efficient Items | Appliances | Appliances | | Appliances | | Appliances | |
| Garage/Carport | Driveway | 1 Car Garage | -3,500 | Driveway | | Driveway | |
| Porch/Patio/Deck | Patio | Deck | 0 | Deck | 0 | None | 2,500 |
| Other | None | None | | None | | None | |
| Other | None | None | | None | | None | |
| Other | Second kitchen | None | 5,500 | None | 5,500 | None | |
| Net Adjustment (Total) | | [ ] + [X] - $ | 14,100 | [X] + [ ] - $ | 11,800 | [X] + [ ] - $ | 625 |
| Adjusted Sale Price | | Net Adj. -3.7% | | Net Adj. 3.5% | | Net Adj. 0.2% | |
| of Comparables | | Gross Adj. 9.5% $ | 364,900 | Gross Adj. 13.2% $ | 351,800 | Gross Adj. 6.2% $ | 345,525 |

Summary of Sales Comparison Approach Comparable #4 is a closed sale included in support of the Appraiser opinion of market value of the subject property. Comparables #5 & #6 are active listing included as an indication of the direction of the current market. The sale to list ratio based on OneKeyMLS data is averaged at 98.50%.

In developing the opinion of market value the Appraiser first researches the subject property in public records, NYS, Rockland County, Town of Ramapo, OneKeyMLS, Property Shark and NYS ORPS. Next an onsite inspection is performed, the exterior and interior of the subject are photographed, a determination as to the overall condition of the property is made including but not limited to mechanicals, appliances, cabinetry, counter tops, floor covering, exterior siding, roof, amenities and upgrades.

The Appraiser researches the sales history of the subject and any properties that may have sold on the subject street. The research is the expanded to the immediate neighborhood and market area for properties that are similar to the subject in style, overall condition, locations, site size and gross living area. The results of the search are included in this report and represent the most recent sales that are most similar to the subject.

The reader will notice line item adjustments on the grid above. These adjustment represent differences in site size, gross living area, bathroom count and condition. The adjustments are based on what the market is willing to pay for the amenities. The adjustments are based on the past 12 months of sales of all properties located in the subject market area.

The opinion of market value for the subject property is accurate as of the date of this report. The Appraiser can not anticipate or predict market conditions and interest rates that may or may not affect homes prices.



## Scope of Work, Assumptions and Limiting Conditions

Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply  what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected,  the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.

The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1  The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable  The property is appraised as though under responsible ownership

2  Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property  The appraiser has made no survey of the property

3  The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made thereto.

4  Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5  The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6  Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser

7  The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such

8  The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

**Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.**

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9  Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10  Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

**11.  The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).**

Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions



This form Copyright © 2005-2010 ACI Division of ISO Claims Services, Inc. All Rights Reserved.
(GPAR™) General Purpose Appraisal Report  05/2010
GPAR1004_05052010a

## Appraiser's Certification

**The appraiser(s) certifies that, to the best of the appraiser's knowledge and belief:**

1  The statements of fact contained in this report are true and correct.

2  The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3  Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved

4  The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment

5  The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results

6  The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7  The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice

8  Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report

9  Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification  Significant real property appraisal assistance provided by

**Additional Certifications:**

Definition of Value:  ☐ Market Value   ☐ Other Value: _____
Source of Definition: _____

ADDRESS OF THE PROPERTY APPRAISED:
32 Prospect Street
Spring Valley, NY  10977
EFFECTIVE DATE OF THE APPRAISAL  04/06/2020
APPRAISED VALUE OF THE SUBJECT PROPERTY $ 350,000

| APPRAISER | SUPERVISORY APPRAISER |
|---|---|
| Signature: *Bruce J. Potash* | Signature: |
| Name:  Bruce J  Potash | Name |
| State Certification #  4500004461 ■ | State Certification # |
| or License # | or License # |
| or Other (describe) _____ State #: | or Other (describe) _____ State #: |
| State: NY | State: |
| Expiration Date of Certification or License:  01/02/2021 | Expiration Date of Certification or License: |
| Date of Signature and Report:  04/09/2020 | Date of Signature: |
| Date of Property Viewing | Date of Property Viewing |
| Degree of property viewing | Degree of property viewing |
| [X] Interior and Exterior  ☐ Exterior Only  ☐ Did not personally view | ☐ Interior and Exterior  ☐ Exterior Only  ☐ Did not personally view |

This form Copyright © 2005 2010 ACI Division of ISO Claims Services, Inc , All Rights Reserved
lgPAR™1 General Purpose Appraisal Report  09/2010
GPAR406F 10105262010



B&G Potash, Inc.

| | |
|---|---|
| Client: Larry Weinstein | File No.: BG2004131 |
| Property Address: 32 Prospect Street | Case No.: BG2004131 |
| City: Spring Valley | State: NY    Zip: 10977 |



**FRONT VIEW OF SUBJECT PROPERTY**

Appraised Date: April 6, 2020
Appraised Value: $ 350,000



**REAR VIEW OF SUBJECT PROPERTY**



**STREET SCENE**



Kitchen
Floor 1



Living Room
Floor 1



Bath
Floor 1



Bedroom
Floor 1



Bedroom
Floor 1



Bedroom
Floor 1

B&G Real Estate Appraisers, LLC

| Client: Larry Weinstein | | File No.: BG2004131 |
|---|---|---|
| Property Address: 32 Prospect Street | | Case No.: BG2004131 |
| City: Spring Valley | State: NY | Zip: 10977 |



Electric on and functional
Floor 1



Water on and functional
Floor 1



Electric service panel

| Client: Larry Weinstein | | File No.: BG2004131 | |
|---|---|---|---|
| Property Address: 32 Prospect Street | | Case No.: BG2004131 | |
| City: Spring Valley | State: NY | | Zip: 10977 |



Kitchen
Floor 2



Living Room
Floor 2



Bath
Floor 2



Bedroom
Floor 2



Bedroom
Floor 2



Bedroom
Floor 2





Laundry
Floor 1

Mechanicals
Floor 1









| | |
|---|---|
| Client: Larry Weinstein | File No.: BG2004131 |
| Property Address: 32 Prospect Street | Case No.: BG2004131 |
| City: Spring Valley | State: NY     Zip: 10977 |



**COMPARABLE SALE #1**

16 Rusten Lane
Nanuet, NY 10954
Sale Date: 10/18/2019
Sale Price: $ 315,000



**COMPARABLE SALE #2**

10 Hazel Court
Spring Valley, NY 10977
Sale Date: 08/23/2019
Sale Price: $ 400,000



**COMPARABLE SALE #3**

9 Pauline Court
Spring Valley, NY 10977
Sale Date: 08/15/2019
Sale Price: $ 375,000

| Client: Larry Weinstein | | File No.: BG2004131 | |
|---|---|---|---|
| Property Address: 32 Prospect Street | | Case No.: BG2004131 | |
| City: Spring Valley | State: NY | | Zip: 10977 |



**COMPARABLE SALE #4**

69 S Cole Court
Spring Valley, NY 10977
Sale Date: 05/02/2019
Sale Price: $ 379,000



**COMPARABLE SALE #5**

10 Mila Lane
Spring Valley, NY 10977
Sale Date: Active Listing
Sale Price: $ 340,000



**COMPARABLE SALE #6**

6 Paquin Lane
Spring Valley, NY 10977
Sale Date: Active Listing
Sale Price: $ 344,900

# FLOORPLAN SKETCH

| | | |
|---|---|---|
| Client: Larry Weinstein | File No.: BG2004131 | |
| Property Address: 32 Prospect Street | Case No.: BG2004131 | |
| City: Spring Valley | State: NY | Zip: 10977 |



Patio

Sketch by Apex Medina™

Comments:

## AREA CALCULATIONS SUMMARY

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 915.0 | |
| | Second Floor | 1051.0 | 1966.0 |
| GAR | Garage | 96.0 | 96.0 |

| | Net LIVABLE Area | (rounded) | 1966 |
|---|---|---|---|

## LIVING AREA BREAKDOWN

| | Breakdown | | | Subtotals |
|---|---|---|---|---|
| First Floor | | | | |
| | 24.0 | x | 32.0 | 768.0 |
| | 10.0 | x | 12.0 | 120.0 |
| 0.5 x | 3.0 | x | 3.0 | 4.5 |
| | 6.0 | x | 3.0 | 18.0 |
| 0.5 x | 3.0 | x | 3.0 | 4.5 |
| Second Floor | | | | |
| | 24.0 | x | 42.0 | 1008.0 |
| | 2.0 | x | 8.0 | 16.0 |
| 0.5 x | 3.0 | x | 3.0 | 4.5 |
| | 6.0 | x | 3.0 | 18.0 |
| 0.5 x | 3.0 | x | 3.0 | 4.5 |

| 10 Items | (rounded) | 1966 |
|---|---|---|

# PLAT MAP

| Client: Larry Weinstein | | File No.: BG2004131 | |
| Property Address: 32 Prospect Street | | Case No.: BG2004131 | |
| City: Spring Valley | State: NY | | Zip: 10977 |



Prospect St

103'

49'

49'

104'

25 yards

Google

Map data ©2020

P:845 987 1157  F:845 987 1075  BANDG1403@AOL.COM

## LOCATION MAP

| | | |
|---|---|---|
| Client: Larry Weinstein | | File No.: BG2004131 |
| Property Address: 32 Prospect Street | | Case No.: BG2004131 |
| City: Spring Valley | State: NY | Zip: 10977 |



## AERIAL MAP

| Client: Larry Weinstein | | File No.: BG2004131 |
|---|---|---|
| Property Address: 32 Prospect Street | | Case No.: BG2004131 |
| City: Spring Valley | State: NY | Zip: 10977 |



Subject
32 Prospect Street
Spring Valley, NY 10977

# FLOOD MAP

| | | |
|---|---|---|
| Client: Larry Weinstein | | File No.: BG2004131 |
| Property Address: 32 Prospect Street | | Case No.: BG2004131 |
| City: Spring Valley | State: NY | Zip: 10977 |



Subject
32 Prospect St
Spring Valley, NY 10977

## FLOOD INFORMATION

Community: Village of Spring Valley

Property is NOT in a FEMA Special Flood Hazard Area

Map Number: 36087C0156G

Panel: 36087C0156

Zone: X

Map Date: 03-03-2014

FIPS: 36087

Source: FEMA DFIRM

## LEGEND

 = FEMA Special Flood Hazard Area – High Risk

 = Moderate and Minimal Risk Areas

Road View:

 = Forest  = Water

### Sky Flood™

No representations or warranties to any party concerning the content, accuracy or completeness of this flood report, including any warranty of merchantability or fitness for a party or purpose is implied or provided. Visual scaling factors differ between map layers and are separate from flood zone information at market location. No liability is accepted by any third party for any use or misuse of this flood map or its data.

********* **INVOICE** *********

File Number: BG2004131                    04/09/2020

Larry Weinstein
Larry Weinstein
32 Prospect Street
Spring Valley, NY 10977

Invoice # :        BG2004131
Order Date :       04/05/2020
Reference/Case # : BG2004131
PO Number :

32 Prospect Street
Spring Valley, NY  10977

|  |  |  |
|---|---|---|
| PAD | $ | 500.00 |
|  | $ | .............. |
| Invoice Total | $ | 500.00 |
| State Sales Tax @ | $ | 0.00 |
| Deposit | ( $ | 500.00 ) |
| Deposit | ( $ | ) |
|  |  | .............. |
| Amount Due | $ | 0.00 |

Terms:   Due upon Receipt

Please Make Check Payable To:

B&G Real Estate Appraisers, LLC.
PO Box 27
Bellvale NY 10912

Fed. I.D. #: 20-3113006

Thank you for your Business